HOYER & HICKS
Richard A. Hoyer (SBN 151931)
rhoyer@hoyerlaw.com
Ryan L. Hicks (SBN 260284)
rhicks@hoyerlaw.com
Hallie A. Makrakis (SBN 339004)
hmakrakis@hoyerlaw.com
4 Embarcadero Center, Suite 1400
San Francisco, CA 94114
*tel* (415) 766-3539
*fax* (415) 276-1738

Attorneys for Plaintiff
ELIE LAHHOUD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIE LAHHOUD,<br><br>  Plaintiff,<br><br>vs.<br><br>TORDEN, LLC and DOES 1-25,<br><br>  Defendants. | Case No. 3:23-cv-03623-JCS<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES:**<br>**(1) Disability Discrimination in Violation of the Americans with Disabilities Act of 1990 ("ADA")**<br>**(2) Failure to Accommodate in Violation of the ADA**<br>**(3) Failure to Engage in the Interactive Process in Violation of the ADA**<br><br>**DEMAND FOR JURY TRIAL** |

Pursuant to Federal Rule of Civil Procedure 15(1)(B), Plaintiff, ELIE LAHHOUD, (hereinafter "Mr. Lahhoud or "Plaintiff") submits this first amended complaint against Defendant TORDEN, LLC ("Torden" and/or "Defendant") and DOES 1-25 (collectively "Defendants"). Plaintiff amends the complaint to add a cause of action for disability discrimination, failure to accommodate and failure to engage in the interactive process under the Equal Employment Opportunity Commission and alleges as follows:

FIRST AMENDED COMPLAINT 1

## INTRODUCTION

1. Plaintiff is a United States Army Veteran Sargent. Plaintiff was employed by Defendant as a CAT II Arabic Linguist (hereinafter referred to as "Linguist") in support of the Defense Language Interpreter Translator Enterprise in Guantanamo Bay from September 9, 2022 until he was forced to resign on or around October 11, 2022.

2. On July 24, 2022, Plaintiff provided medical documentation to Defendant as it required for its pre-deployment processing. In this medical documentation, Plaintiff put Defendant on notice of his asthma. On September 2, 2022, Defendant provided Plaintiff with an employment offer which Plaintiff then accepted. Plaintiff was deployed to Guantanamo Bay and began working for Defendant on September 9, 2022.

3. Defendant required Plaintiff to live on-site at its United States Government Facility housing. The housing provided to Plaintiff was plagued by mold and triggered Plaintiff's asthma making it difficult for him to breathe and requiring Plaintiff to seek healthcare while deployed in Guantanamo Bay. While employed by Defendant Plaintiff notified Defendant that the mold in his assigned housing was causing him health issues by provoking his asthma eventually leading to Plaintiff having to seek healthcare at the Naval Hospital Emergency Room. Defendant repeatedly ignored or declined to engage with Plaintiff to find a suitable accommodation and as a result failed to accommodate Plaintiff's disability.

4. On October 11, 2022, Plaintiff was forced to resign due to asthma complications from his accommodations not having been met by Defendant. Plaintiff has suffered damages for which he now seeks to recover from Defendant through judicial intervention.

## PARTIES, JURISDICTION AND VENUE

5. Plaintiff was a resident of the State of California and was hired by Defendant in San Francisco County.

6. Defendant was doing business in San Francisco County and formerly hired Plaintiff in San Francisco. Defendant required Plaintiff to deploy to Guantanamo Bay for employment

when the events that give rise to this action occurred.

7. At all relevant times, Defendant employed Plaintiff.

8. The Americans with Disabilities Act ("ADA") authorizes private rights of action to recover damages for violation of its non-discrimination provisions. 28 C.F.R. §36. This Court has original federal question jurisdiction under 28 U.S.C. §1331.

9. Venue in this district is proper pursuant to 28 U.S.C. §1391(b). At all material times Defendant has been actively conducting business in the State of California and within the geographic area encompassing the Northern District of the State of California.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Plaintiff filed a timely charge of discrimination against Defendant with the California Civil Rights Department ("CRD"). Plaintiff received his Right to Sue notice from CRD dated May 24, 2023 authorizing suit against Defendant.

11. Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission on July 28, 2023. A right to sue was issued on August 3, 2023. Plaintiff provided this notice to Defendant on August 4, 2023. Plaintiff has commenced this action in a timely manner.

## FACTUAL ALLEGATIONS

12. Plaintiff was employed by Defendant as a CAT II Arabic Linguist (hereinafter referred to as "Linguist") from September 9, 2022 until he was forced to resign on October 11, 2022. While employed by Defendant, Plaintiff was subject to discrimination based on disability (asthma).

13. Defendant is an Equal Opportunity Employer and a VA-certified Service-Disabled Veteran Owned Small Business. Defendant requires its linguists to provide medical clearance documentation prior to hiring and/or assigning its linguists to overseas locations.

14. On July 24, 2022, approximately six weeks before he was to depart to Guantanamo Bay as a cleared linguist, and *prior to being hired* by Defendant, Plaintiff provided his medical examination to Defendant via email directed to Emily Patterson, Defendant's Program

Management Office Support Specialist Assistant. In Plaintiff's medical documentation he put Defendant on notice of his asthma.

15. On September 2, 2022, Defendant offered and Plaintiff accepted an employment position as a Linguist in Guantanamo Bay to provide foreign language services to aid in defense decisions and to provide support in intelligence gathering.

16. On September 9, 2022, Plaintiff arrived in Guantanamo Bay and was introduced to his two on-site managers, Jessica Moyers and Adam Rookard. Plaintiff was greeted by Mr. Rookard and taken to his assigned housing contractually provided by Defendant and located at Villamar 35A (hereinafter referred to as "V-35A" or "assigned residence"). While showing Plaintiff the premises of V-35A, Mr. Rookard informed Plaintiff that his roommate, Emad Wahba, had put forth a lot of effort to clean and fix V-35A from a "big mold issue." On his first night living in V-35A, Plaintiff attempted to alleviate the strong mold smell by opening both windows in his bedroom.

17. On September 22, 2022, after several days of heavy rain, the mold became increasingly unbearable and Plaintiff began having trouble breathing because the mold triggered and aggravated his asthma. The following day, Plaintiff went to the Navy Exchange mall where he purchased cleaning supplies to clean out the mold in V-35A. Plaintiff was mostly unsuccessful in his efforts because the mold was in cervices and in the ventilation throughout his unit.

18. On September 26, 2022, Plaintiff emailed Ms. Moyers, to inform her that his housing had a "strong mold smell" and that he had spent hours cleaning only the kitchen area to get rid of some of the mold. Plaintiff further stated that he woke up during the night with chest pain that he believed there to be a mold smell to be coming from the air-condition in his assigned residence. Plaintiff went on to explain in his email to Ms. Moyers that because of the mold Plaintiff had to use his emergency inhaler because he has severe asthma. Plaintiff requested from Ms. Moyers that Defendant send someone to check for mold in his house and air-conditioning system.

19. Later on September 26, 2022, Ms. Moyers responded to Plaintiff's email stating, "I'm sorry to hear this. Mold is a big issue here. It's important to properly circulate air throughout your home and keep the A/C at 72, per Housing's instructions." Ms. Moyers then told Plaintiff to, "Please refer to Adam [Rookard's] email about work orders. You will need to call [maintenance] and inform them of the issue."

20. On October 1, 2022, Ms. Moyer and Mr. Rookard went on a two-week vacation. During this time, Plaintiff was told to report to temporary managers Paul Clemens, Torden's Chief Operating Officer and Delisia Nazario, Torden's Program Management Office Support Manager. Between September 26, 2022 and October 2, 2022, Plaintiff attempted to contact maintenance as directed by Ms. Moyers from both the land-line in his assigned residence and from his personal cell-phone. Plaintiff left voicemails for maintenance but was repeatedly unsuccessful in his efforts to contact Torden's maintenance department.

21. On or around October 3, 2022, Plaintiff was finally successful in contacting maintenance and requested they come and check for mold in his building. Plaintiff spoke with a female maintenance agent and informed her that there is strong mold in his apartment that is triggering his asthma. During this call, Plaintiff was informed that a work order had been submitted and that maintenance would fix the mold in his assigned residence.

22. On or around October 5, 2022, workers came by to install safety devices on Plaintiff's windows so that they no longer opened fully and Plaintiff could not circulate air flow to combat the strong mold odor throughout his assigned residence.

23. On or around October 6, 2022, two maintenance workers came by Plaintiff's assigned residence to paint the interior walls to "cover the mold smell." Plaintiff informed the workers that covering the smell would not fix the issue and the workers responded stating that they were only following their assigned work order.

24. Later that day, on or around October 6, 2022, Plaintiff went to the office to speak with Mr. Clemens and Ms. Nazario in person regarding the ongoing mold issue. Plaintiff spoke directly to Ms. Nazario in the presence of both Mr. Clemens (who was approximately 3-4 feet

away) *and* with another linguist within earshot of the conversation. Ms. Nazario provided Plaintiff with her contact information and informed him that she would come by his unit to evaluate how bad the mold is. No alternative housing or other accommodation was offered to Plaintiff during this brief 4–5-minute conversation.

25. At 12:08 p.m. on October 6, 2022, following the conversation with Ms. Nazario in her office, Plaintiff sent a text message to Ms. Nazario to provide her with his contact information. At 1:42 p.m. Plaintiff emailed Ms. Nazario and sent images of the mold, described the failed attempts by Defendant's maintenance to cover the mold and provided an update on his worsened symptoms caused by the mold. In this email Plaintiff stated, "recently my asthma got worse and new symptoms as pain in chest and headache have developed. I hope you can find me another place[.]" Plaintiff received no response from Ms. Nazario on October 6, 2022.

26. On October 7, 2022, Mr. Clemens, emailed Plaintiff and stated that he had received Plaintiff's "note" on mold and that Mr. Clemens would "look at it right away." That same day, Ms. Nazario emailed Plaintiff stating "Paul and I are tracking. I will further discuss with Jessica [Moyers] when she returns on 14 OCT 2022." Neither Mr. Clemens, Ms. Nazario nor anyone else attempted to resolve the issues with mold or discuss or offer Plaintiff other accommodations and his asthma continued to worsen due to the mold in his assigned housing, V-35A.

27. From October 9th through 10th the mold in Plaintiff's assigned residence caused his asthma to become so severe that he could not breath and he was unable to sleep through the night.

28. On the morning of October 11, 2022, Plaintiff was seen at the Emergency Room at the Navy Hospital on Guantanamo Bay where his doctor prescribed medication for his asthma and told Plaintiff to change his environment immediately in reference to his assigned housing.

29. The evening of October 11, 2022, Plaintiff emailed Ms. Nazario (with Cc to Ms.

Moyers, Paul Clemens and Adam Rookard) stating that he "had to go to the [Emergency Room] at the Naval hospital Guantanamo Bay because [his] asthma symptoms got very bad." because Torden repeatedly failed to clean out the mold in his assigned housing or find him alternate housing, Plaintiff's doctor advised him to "change [his] environment immediately." Plaintiff further informed Ms. Nazario that he had made a reservation for 3 nights at the Navy Lodge Guantanamo Bay and that he was resigning from Torden.

30. Due to the egregious conditions of V-35A, Plaintiff was forced to resign and took it upon himself to find suitable accommodation per his doctor's recommendation. Plaintiff checked into the Navy Lodge Guantanamo Bay where he stayed from October 11th through 14th.

31. On October 12, 2022, Ms. Nazario emailed Plaintiff to inform him that a departure request for Plaintiff to leave Guantanamo Bay has been submitted for October 14, 2022 at which time he left Guantanamo Bay and flew to Florida. Plaintiff's asthma was so bad that he was forced to stay in Tampa, Florida for one night as he was too sick from his accommodation not being met by Defendant to travel straight through to San Francisco, California at this time.

## FIRST CAUSE OF ACTION

### Disability Discrimination in Violation of the ADA

32. Defendant is an employer covered by the ADA. Defendant has more than fifteen (15) employees.

33. At all relevant times herein, Plaintiff was employed by Defendant.

34. Plaintiff had a disability defined by the ADA. Plaintiff suffered from physical condition caused by the mold in his assigned housing provided by Defendant in Guantanamo Bay that substantially limited one or more of his major life activities.

35. Plaintiff informed Defendant of his disability prior to his arrival to Guantanamo Bay and during his deployment. Plaintiff requested to be accommodated. There was an accommodation available for Plaintiff that would not have posed an undue hardship to

Defendant. Defendant's conduct as alleged above constitutes discrimination on the basis of disability in violation of the ADA.

36. Plaintiff was harmed.

37. Defendant's unlawful conduct, as alleged herein, was a substantial factor in causing Plaintiff's harm.

## SECOND CAUSE OF ACTION

### Failure to Accommodate in Violation of the ADA

38. Defendant is an employer covered by the ADA. Defendant has more than fifteen (15) employees.

39. At all relevant times herein, Plaintiff was employed by Defendant.

40. Plaintiff had a disability defined by the ADA. Plaintiff suffered from physical condition caused by the mold in his assigned housing provided by Defendant in Guantanamo Bay that substantially limited one or more of his major life activities.

41. Plaintiff informed Defendant of his disability prior to his arrival to Guantanamo Bay and during his deployment. Plaintiff requested to be accommodated.

42. There was an accommodation available for Plaintiff that would not have posed an undue hardship to Defendant.

43. Defendant failed to provide an accommodation to Plaintiff.

44. Plaintiff was harmed.

45. Defendant's unlawful conduct, as alleged herein, was a substantial factor in causing Plaintiff's harm.

## THIRD CAUSE OF ACTION

### Failure to Engage in the Interactive Process in Violation of the ADA

46. Defendant is an employer covered by the ADA. Defendant has more than fifteen (15)

employees.

47. At all relevant times herein, Plaintiff was employed by Defendant.

48. Plaintiff had a disability defined by the ADA. Plaintiff suffered from physical condition caused by the mold in his assigned housing provided by Defendant in Guantanamo Bay that substantially limited one or more of his major life activities.

49. Plaintiff informed Defendant of his disability prior to his arrival to Guantanamo Bay and during his deployment. Plaintiff requested to be accommodated.

50. There was an accommodation available for Plaintiff that would not have posed an undue hardship to Defendant.

51. Defendant refused to engage in an interactive process with Plaintiff to identify and implement reasonable accommodations.

52. Plaintiff was harmed.

53. Defendant's unlawful conduct, as alleged herein, was a substantial factor in causing Plaintiff's harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For an award of damages to Plaintiff against Defendant, including compensatory damages, economic damages, emotional and physical distress, and for any punitive or penalty damages allowed under law;

2. All applicable statutory penalties;

3. Costs and expenses of this action incurred herein, including reasonable attorneys' fees and expert fees;

4. A declaratory judgment that Defendant discriminated against and retaliated against Plaintiff in violation of the ADA and in violation of FEHA;

5. Pre- and post-judgment interest, as provided by law;

6. Exemplary damages; and

7. Any and all such other and further legal and equitable relief as this Court deems necessary, just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims to which he has a right to jury trial.

Date: August 25, 2023           HOYER & HICKS



Richard A. Hoyer
Attorney for Plaintiff
ELIE LAHHOUD